UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SWIFT PAWS, INC.,

     Plaintiff,

v.                                                                          Case No: 6:26-cv-259-JSS-LHP

DEFENDANTS IDENTIFIED IN
SCHEDULE A,

     Defendants.
_____/

## ORDER

Plaintiff sues Defendants (identified in Schedule A attached to the complaint, (Dkt. 1-2)) under the Patent Act, 35 U.S.C. §§ 1–390, for the alleged infringement of looping lure systems for use as lure-chasing pet toys patented under United States Patent Numbers 10,609,904 and 12,156,508. (Dkt. 1.) At 6:15 P.M. E.D.T. on March 9, 2026, the court granted Plaintiff's verified motion (Dkt. 9) and entered an ex parte temporary restraining order (TRO), including an asset freeze, against Defendants. (Dkt. 10.) On March 13, 2026, the court extended the period for the TRO to 6:15 P.M. E.D.T. on April 6, 2026. (Dkt. 17.) Plaintiff has paid the $10,000 that the court required as security for the TRO, (Dkt. 10 at 16; Dkt. 20), and now moves to convert the TRO to a preliminary injunction against Defendant Zhende Tech (identified in at least the first two entries of Schedule A, which are associated with the Amazon platform, (Dkt. 1-2 at 1)), (Dkt. 23). Zhende Tech opposes the motion to convert. (Dkt. 24.) On March 30, 2026, the court held an evidentiary hearing on the motion. (*See* Dkts. 19, 26, 27.) Upon consideration, the court grants the motion and converts

the TRO to a preliminary injunction against Zhende Tech.

## BACKGROUND

In the complaint, Plaintiff asserts one count of infringement of its two utility patents. (Dkt. 1 ¶¶ 45–53.) To remedy the alleged infringement, Plaintiff seeks injunctive and monetary relief, including legal fees. (*Id.* at 16–17.)

Plaintiff, a corporation headquartered in Melbourne, Florida, develops and sells pet products, including pet toys. (Dkt. 9 at 2.) As relevant here, Plaintiff developed and sold the looping lure systems for use as lure-chasing pet toys with the claimed elements of the asserted patents (the patented products). (*Id.* at 2–3.) Plaintiff owns United States Patent Number 10,609,904 titled Lure Chasing System (the '904 patent). (*Id.* at 3.) The '904 patent application was filed on December 14, 2014, and issued by the United States Patent and Trademark Office (USPTO) on April 7, 2020. (*Id.*) Plaintiff has attached the '904 patent as Exhibit 2 to the complaint. (*Id.*; *see* Dkt. 1-3.) In addition, Plaintiff owns United States Patent Number 12,156,508 titled Pulley System Allowing for Passage of Object Attached to Line ('508 patent). (Dkt. 9 at 3.) The '508 patent application was filed on April 11, 2022, and issued by the USPTO on November 13, 2024. (*Id.*) Plaintiff has attached the '508 patent as Exhibit 3 to the complaint. (*Id.*; *see* Dkt. 1-4.) Since at least 2016, Plaintiff has sold its products to the public. (Dkt. 9 at 3.) Plaintiff sells its products—including the patented products— through its website, its Amazon store, the Chewy retail site, and other online sites. (*Id.* at 3–4.) Further, Plaintiff's patented products have appeared multiple times on the national television show Shark Tank. (*Id.* at 4.)

Plaintiff has recently learned that some ecommerce stores were promoting, advertising, marketing, distributing, offering for sale, and selling products covered by one or more claims of each of the asserted patents. (*Id.*) This ecommerce activity occurred through stores operating under the seller aliases identified in Schedule A, which is Exhibit 1 to the complaint. (*Id.*; *see* Dkt. 1-2.) Defendants are the stores listed in Schedule A, including Zhende Tech. (*See* Dkts. 1, 1-2, 9.) According to Plaintiff, Defendants conceal their identities using fictitious names and addresses to register and operate their network of online storefronts. (Dkt. 9 at 4.) Plaintiff asserts upon information and belief that Defendants reside or operate in foreign jurisdictions and manufacture, distribute, import, offer for sale, or sell products, including infringing products, from the same or similar sources in those foreign locations into the United States, where the products are offered for sale under aliases through online marketplaces. (*Id.*)

Plaintiff states that through online marketplaces, such as Amazon, eBay, TikTok, and Temu, Defendants have infringed, and continue to infringe, on Plaintiff's asserted patents by manufacturing, distributing, importing, offering for sale, or selling the looping lure systems for use as lure-chasing pet toys, which perform the same function in the same way and achieve the same result as is claimed in the asserted patents. (*Id.* at 2.) Plaintiff asserts that Defendants' infringing products are in direct competition with the patented products sold by Plaintiff, without any license or authorization from Plaintiff. (*Id.*) Schedule A identifies Defendants by providing their sold-by names, seller business names, product Amazon Standard Identification

Numbers (ASINs), and product and seller storefront links, which consist of Amazon.com web addresses or similar information.  (Dkt. 1-2.)

A claims chart with descriptions and photographs, attached as Exhibit 4 to the complaint, displays one of Zhende Tech's allegedly infringing products for comparison with Plaintiff's patent claims.  (Dkt. 1-5.)  Review of the claims chart reveals that Defendants' allegedly infringing products likely infringe the asserted claims of the asserted patents.  (*See id.*)  Plaintiff reports that Defendants' infringing products are made with inferior materials and are offered at reduced prices, thereby negatively affecting Plaintiff's revenue, goodwill, and market position.   (Dkt. 9 at 12–14.) Plaintiff further reports that Defendants often use tactics involving search engine optimization and product promotion methods that directly divert consumers to Defendants' infringing products from Plaintiff's patented products, which reduces Plaintiff's market share.  (*Id.*)

At the evidentiary hearing, Plaintiff and Zhende Tech presented argument on the motion, and Plaintiff introduced eleven exhibits into evidence and called one witness.  Zhende Tech did not introduce any exhibits or call any witnesses.  The eleven exhibits, which were admitted without objection, consisted of the '904 and '508 patents (Exhibits 1 and 2), Schedule A (Exhibit 3), documents showing the assignment of the patents to Plaintiff (Exhibits 4 and 5), the claims chart (Exhibit 6), screenshots related to Defendants' online marketplaces (Exhibits 7 and 8), reviews of allegedly infringing products (Exhibit 9), video footage of Plaintiff on Shark Tank (Exhibit 11), and screenshots of complaints from Plaintiff to online marketplaces about allegedly

infringing products (Exhibit 12).  (Dkt. 27.)  Plaintiff used a physical exemplar of an allegedly infringing product from Zhende Tech (Exhibit 10) to argue patent infringement but did not offer the exemplar into evidence.  (*See id.*)

Meghan Wolfgram, Plaintiff's founder and chief executive officer, testified on its behalf.  (*See* Dkt. 13.)  She provided general information about Plaintiff, described her role in developing Plaintiff's products and securing the patents at issue, and discussed the assignment of the patents to Plaintiff.  She also stated that she bought the exemplar from Zhende Tech through Amazon and that the claims chart shows photographs of the exemplar.  With reference to the exemplar, Ms. Wolfgram explained how the features described in the patents function and how the claims chart illustrates Zhende Tech's infringement of the patents.  As to sales, she testified that Plaintiff sells products in various ways—online, at charity events and pet competitions, and through twenty-five to thirty independent retailers—and that Plaintiff has sold 20,000 products since 2012.  She further testified that Plaintiff granted a license to one company to sell a product covered by the patents and that as the sales of allegedly infringing products increased, the licensee's sales decreased, indicating that Defendants are diverting consumers from Plaintiff and the licensee.  According to Ms. Wolfgram, Plaintiff could not manufacture products at prices as low as those of the allegedly infringing products without sacrificing quality.  Relatedly, she shared negative consumer reviews about the allegedly infringing products and explained that the negative reviews have damaged Plaintiff's reputation because Plaintiff's name has become synonymous with all products in its category of lure-chasing pet toys.  In fact,

Ms. Wolfgram reported, a consumer called Plaintiff's customer support number to complain about an unsafe product because he believed that he had bought one of Plaintiff's products when actually, he had purchased a competitor's product.

Before the hearing, Zhende Tech submitted a response focusing in large part on the terms "drive window," "arcuate surface," and "opening height" in the '904 patent and "object passthrough window" and "inwardly beveled pulley shield" in the '508 patent. (Dkt. 24 at 3–16.) Zhende Tech discussed the terms when arguing that the exemplar does not demonstrate infringement of the patents and when challenging the validity of the '904 patent based on the indefiniteness of some of its terms. (*Id.*) During both direct and cross-examination, Ms. Wolfgram explained how the exemplar includes the challenged terms. Following Ms. Wolfgram's testimony, the parties presented closing arguments. Plaintiff argued that Zhende Tech is attempting to rewrite the text of the patent claims based on language in the patent specifications and that claim construction is unnecessary because the terms in the patent claims, including the challenged terms, can be given their ordinary meanings. Plaintiff further maintained, with respect to irreparable injury, that the same photographs for allegedly infringing products appear on the sites of various online marketplaces such that the sales discussed during the hearing represent only a fraction of the sales diverted from Plaintiff. Zhende Tech contended that claim construction is necessary and that as a lay witness, Ms. Wolfgram cannot provide it. Zhende Tech conclusorily objected under Federal Rules of Evidence 401, 402, 403, and 702 and Federal Rule of Civil Procedure 26 to Ms. Wolfgram's lay testimony connecting claims terms to the

exemplar.  Zhende Tech also asserted that the patents include indefinite terms and that as to irreparable injury, Plaintiff has a monetary remedy for infringement whereas Zhende Tech has no adequate remedy if the court issues a preliminary injunction and thereafter Zhende Tech is found not to have infringed the patents.

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 65 governs TROs and preliminary injunctions. *See* Fed. R. Civ. P. 65.  The key difference is that whereas TROs may issue without notice to the adverse party, *see* Fed. R. Civ. P. 65(b)(1), "[t]he court may issue a preliminary injunction only on notice to the adverse party," Fed. R. Civ. P. 65(a)(1). "Every order granting an injunction and every [TRO] must . . . state the reasons why it issued[,] . . . state its terms specifically[,] and . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  Rule 65 further states: "The court may issue a preliminary injunction or [TRO] only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c); *accord* M.D. Fla. R. 6.01(a)(4) (requiring a TRO motion to "include . . . a precise and verified explanation of the amount and form of the required security"); M.D. Fla. R. 6.02(a)(1) (requiring the same of a preliminary injunction motion).

"A TRO or preliminary injunction is appropriate where the movant" satisfies four requirements: (1) "there is a substantial likelihood of success on the merits," (2) "the TRO or preliminary injunction is necessary to prevent irreparable injury," (3) "the

threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant," and (4) "the TRO or preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034 (11th Cir. 2001); *accord* M.D. Fla. R. 6.01(b), 6.02(a)(1). Preliminary injunctive relief "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites." *Wall v. Ctrs. for Disease Control & Prevention*, 543 F. Supp. 3d 1290, 1292 (M.D. Fla. 2021) (alteration adopted and quotations omitted).

Relatedly, a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). An order freezing assets should provide a procedure for the person whose assets are frozen to petition the court to modify the asset freeze. *See id.* at 987–88 (affirming an asset freeze in a trademark infringement case because the asset freeze "expressly allowed [the defendants] to petition the district court to modify the freeze" (citing *Fed. Trade Comm'n v. Atlantex Assocs.*, 872 F.2d 966, 970–71 (11th Cir. 1989))).

## ANALYSIS

The court discusses the four requirements for a preliminary injunction—likelihood of success on the merits, irreparable injury, balance of harms, and public interest—and then explains why continuing the asset freeze is warranted.

### A. Likelihood of Success on the Merits

The Patent Act permits courts to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "In seeking a preliminary injunction pursuant to section 283, a patent holder must establish a likelihood of success on the merits both with respect to validity of its patent and with respect to infringement of its patent." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).

The Patent Act creates a presumption of validity for a patent. 35 U.S.C. § 282(a) ("A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent . . . shall rest on the party asserting such invalidity."). "In the context of a preliminary injunction, while the burden of proving invalidity is with the party attacking validity, the party seeking the injunction retains the burden of showing a reasonable likelihood that the attack on its patent's validity would fail." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) (quotation omitted). Plaintiff has satisfied that burden by showing that the patents underwent rigorous examination, with the examiners considering numerous references. (*See* Dkts. 1-3, 1-4; Dkt. 23 at 6–7.) *See Grinnell Corp. v. Am. Monorail Co.*, 285 F. Supp. 219, 225 (D.S.C. 1967) ("It is abundantly evident from the file history of the . . . patent that the application was subjected to rigorous examination. . . . Thus[,] the . . . application is entitled fully to the presumption of validity accorded by the statute . . . .").

Admittedly, "[w]hen the presumptions and burdens applicable at trial are taken into account, the injunction should not issue if the party opposing the injunction raises

a substantial question concerning infringement or validity, meaning that it asserts a defense that the party seeking the injunction cannot prove lacks substantial merit." *Oakley*, 316 F.3d at 1340 (alteration adopted and quotation omitted).  As discussed at the hearing, Zhende Tech focuses on terms in the asserted patent claims in an attempt to "raise[] substantial questions of invalidity and non[-]infringement demonstrating that Plaintiff cannot meet its [preliminary injunction] burden and [that] the TRO should be dissolved."  (Dkt. 24 at 5–6.)  With regard to invalidity, Zhende Tech maintains that terms such as "drive window" and "arcuate" in the '904 patent render that patent invalid as indefinite.  (*See id.* at 4, 8 (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015) ("A patent is indefinite if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." (quotation omitted))).)  It would appear that Zhende Tech does not attack the validity of the '508 patent but instead argues only the non-infringement of that patent.  (*See id. passim.*)  To the extent that Zhende Tech argues the '508 patent's invalidity, for example, based on the purported indefiniteness of claim terms, the court concludes that the legal presumption of validity remains intact as to that patent.

For a patent "to be indefinite, reasonable efforts at claim construction must result in a definition that does not provide sufficient particularity or clarity to inform a skilled artisan of the bounds of the claim."  *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1333 (Fed. Cir. 2013).  The patents at issue are sufficiently definite when the court considers the legal framework for claim construction.  *See id.* at 1321

("To the extent possible, claim terms are given their ordinary and customary meaning, as they would be understood by one of ordinary skill in the art in question at the time of the invention.  Idiosyncratic language, highly technical terms, or terms coined by the inventor are best understood by reference to the specification.  While [courts] construe the claims in light of the specification, limitations discussed in the specification may not be read into the claims.  Courts may rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." (citations omitted)); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir. 1996) ("It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history.  Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language. . . . In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term.  In such circumstances, it is improper to rely on extrinsic evidence." (citation omitted)).  The court notes that "claims themselves [may] provide substantial guidance as to the meaning of particular claim terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

The challenged terms in the '904 patent, specifically "drive window" and "arcuate," do not suffer from indefiniteness.  As to the term "drive window," the specification for the '904 patent consistently uses "drive" in relation to a motorized

- 11 -

pulley unit, contrasted with a transfer pulley unit, (*see* Dkt. 27-1 at 2, 9–11), and consistently uses "window" to describe a feature, numbered forty-eight in the specification's figures, that permits a lure to enter and exit a unit, (*see id.* at 10–11). Although the term "drive window" does not appear in the specification, only in the claims, (*see id. passim*), a skilled artisan would know the bounds of the asserted claims in light of the ordinary meaning of "drive window" as a combination of "drive" and "window" and the definitions of those constituent terms derived from their uses in the specification. *See Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004) ("It is true that the entire term . . . is not defined in the patent . . . . Nonetheless, the components of the term . . . allow the reader to infer the meaning of the entire phrase with reasonable confidence."). As to the term "arcuate," which is similarly confined to the claims, (*see* Dkt. 27-1), the parties seemingly agree that the dictionary definition of the term, i.e., "curved like a bow," applies. Although Zhende Tech challenges the definiteness of the term, it also provides this definition in its response, (Dkt. 24 at 8), and when on the witness stand, Ms. Wolfgram was amendable to using the definition. In addition, she pointed out the relationship between "arcuate" and the more familiar term "arc." The Oxford English Dictionary defines "arcuate" as "[c]urved like a bow, arc-shaped, arched" and confirms an etymological kinship between the word and "arc." *See Arc*, Oxford English Dictionary (online ed. 2026); *Arcuate*, Oxford English Dictionary (online ed. 2026). The court cannot conclude that any of the terms in the patents are indefinite such that the patents are invalid, and overall, Zhende Tech fails to "raise[] a substantial question concerning . . . validity"

with respect to either patent. *See Oakley*, 316 F.3d at 1340.

Regarding infringement, a defendant infringes a utility patent when "during the term" of the patent, "without authority," the defendant "makes, uses, offers to sell, or sells any patented invention[] within the United States or imports into the United States any patented invention." 35 U.S.C. § 271. Plaintiff's claims chart, (*see* Dkts. 1-5, 27-6), in and of itself, suffices to demonstrate Zhende Tech's infringement of Plaintiff's patents, as the chart illustrates where in Zhende Tech's product each element of the asserted claims of the asserted patents is found. *See Quickie Mfg. Corp. v. Libman Co.*, 180 F. Supp. 2d 636, 642 (D.N.J. 2002) ("[T]he relevant comparison in an infringement determination is . . . of the accused device with the claims of the patent at issue."); *cf. KI Ventures, LLC v. Fry's Elecs., Inc.*, 579 F. App'x 985, 991 (Fed. Cir. 2014) (supporting that "pictures with arrows that clearly point to the accused parts for every claim limitation," like the photographs in the claims chart attached to Plaintiff's complaint, can "clarify . . . infringement contentions"). That said, Ms. Wolfgram's testimony also showed how the exemplar product includes each claim element. Insofar as Zhende Tech disputes her expertise, "expert evidence is not always necessary to resolve questions of patent infringement." *Kyocera Wireless Co. v. President Elecs., Ltd.*, 179 F. App'x 53, 54 (Fed. Cir. 2006) (citing *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984)). In any event, her years of experience developing Plaintiff's products make Ms. Wolfgram a knowledgeable lay witness, if not an expert witness. *See* Fed. R. Evid. 702 (providing that an expert may be "qualified . . . by knowledge, skill, experience, training, or education").

Zhende Tech argues that its products do not infringe Plaintiff's patents because the "drive window," "arcuate surface," and "opening height" elements of the '904 patent and the "object passthrough window" and "inwardly beveled pulley shield" elements of the '508 patent are absent from Zhende Tech's products. (*See* Dkt. 24 at 3–16.)   Having considered Zhende Tech's arguments about non-infringement, including those advanced during the evidentiary hearing, the court does not find the arguments persuasive.  Overall, Zhende Tech does not "raise[] a substantial question concerning infringement."  *See Oakley*, 316 F.3d at 1340.  The court concludes that in light of their features, Zhende Tech's products likely infringe the elements of the asserted claims.

Plaintiff can likely establish the validity of the asserted patents as well as Defendants' infringement thereof.   Accordingly, Plaintiff has demonstrated a substantial likelihood of success on the merits to obtain a preliminary injunction.

## B. Irreparable Injury

For the irreparable injury requirement, the party seeking the preliminary injunction must establish that "the injury is immediate and is not compensable by monetary damages.  Even when considered under traditional equitable rules, however, the existence of a likely infringer in the market may" satisfy this requirement "because of the difficulty of protecting a right to exclude through monetary remedies."  *Tiber Labs., LLC v. Hawthorn Pharms., Inc.*, 527 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007) (quotation omitted).  Plaintiff has identified Defendants as multiple likely infringers sharing an online market with Plaintiff and has submitted evidence that Defendants

are causing Plaintiff harm by using inferior materials—to the detriment of Plaintiff's goodwill—to sell products at reduced prices, thereby diverting consumers from Plaintiff. (Dkt. 23 at 7–8.) Ms. Wolfgram testified, for example, that Plaintiff could not manufacture products for prices as low as those charged by the alleged infringers unless Plaintiff sacrificed the quality of its products. Consequently, Plaintiff has shown that a preliminary injunction is required to prevent irreparable injury.

Zhende Tech contends: "Plaintiff's asserted harm is, at most, competitive marketplace harm that can be addressed through damages if infringement were ultimately proven." (Dkt. 24 at 17.) The court disagrees. Evidence supports that Defendants' infringement of the patents has caused Plaintiff to lose customers and has damaged its goodwill. The reviews in Exhibit 9 demonstrate that consumers have experienced several problems with allegedly infringing products: one reviewer commented that he was "[v]ery disappointed" that a product "completely stopped working no matter how long [he] charge[d] it," a second reviewer described a product's quality as "truly . . . 'bottom of the barrel' bad" and "[a]bsolutely awful," a third reviewer indicated that a product "started to smell like it was burning" on just the second day of owning it, and a fourth reviewer stated: "I have four cats walking around crying for this broken toy. [I will] never buy another." (Dkt. 27-9 at 1–2.) Ms. Wolfgram testified that such negative reviews have damaged Plaintiff's reputation because consumers equate all lure-chasing pet toys with Plaintiff. She further testified to actual consumer confusion—insofar as a consumer called Plaintiff to complain about a product that he mistakenly believed he had bought from Plaintiff—and to the

diversion of customers from Plaintiff and its sole licensee. "[T]he loss of customers and goodwill is an irreparable injury." *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (quotation omitted).

### C. Balance of Harms

As Plaintiff observes, (*see* Dkt. 23 at 8), requiring a patent holder "to compete against its own patented" product such that irreparable injury occurs "places a substantial hardship" on the patent holder. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011). In contrast, "an infringer of [intellectual property] cannot complain about the loss of ability to offer its infringing product." *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011) (collecting cases); *accord i4i L.P. v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) ("The district court's analysis [of the balance of harms] properly ignored the expenses [the defendant] incurred in creating the infringing products. Similarly irrelevant are the consequences to [the defendant] of its infringement, such as the cost of redesigning the infringing products. . . . [N]either commercial success, nor sunk development costs, shield an infringer from injunctive relief. [The defendant] is not entitled to continue infringing simply because it successfully exploited its infringement." (citations omitted)). Accordingly, because Plaintiff has shown a substantial likelihood that it is competing in its online marketplace against products—sold by Defendants—that infringe its patents, Plaintiff has established that its threatened injuries outweigh the harms that a preliminary injunction would cause Defendants. *See XYZ*, 668 F. Supp. 3d at 1276 ("[The p]laintiff faces hardship from loss of sales and his inability to control his

reputation in the marketplace.  By contrast, [the d]efendants face no hardship if they are prohibited from the infringement of [the p]laintiff's copyrights and patents which [consists of] illegal acts.").  Although Zhende Tech complains that it "should not be restrained from selling a non-infringing product," (Dkt. 24 at 17), Plaintiff has shown that Defendants, including Zhende Tech, are likely selling infringing products.

### D. Public Interest

Given "the importance of the patent system in encouraging innovation," *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006), the public has a "general interest in upholding patent rights," *i4i L.P.*, 598 F.3d at 863.  Further, as Plaintiff explains, absent a preliminary injunction, consumers "will continue to be confused and misled by the infringing acts of Defendants[,] and the market will be flooded with inferior [i]nfringing [p]roducts in contravention of Plaintiff's [patent] rights."  (Dkt. 23 at 9.)  Because "the public interest is served by preventing consumer confusion in the marketplace," *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001), Plaintiff has demonstrated that a preliminary injunction preventing Defendants from infringing Plaintiff's utility patents would serve the public interest.  *Cf. Alston v. www.calculator.com*, 476 F. Supp. 3d 1295, 1323 (S.D. Fla. 2020) ("[W]hen a trademark is shown to have been infringed, the public's right to be free of confusion . . . is infringed[,] too[.]" (citation omitted)).  Zhende Tech's argument to the contrary depends on the premise that Zhende Tech has not infringed on Plaintiff's patents, (*see* Dkt. 24 at 18), but the court has explained above that Plaintiff is likely to succeed on the merits of its infringement claims with respect to Defendants, including

Zhende Tech.

### E. Asset Freeze

By satisfying the requirements for likelihood of success, irreparable injury, balance of harms, and public interest, Plaintiff has established the need for a preliminary injunction. *See Wellons*, 754 F.3d at 1263; *Wall*, 543 F. Supp. 3d at 1292. To maintain the status quo, Plaintiff seeks to continue the freeze on Defendants' assets related to the allegedly infringing products that Defendants sell through Amazon.com and other online marketplaces as indicated by Schedule A. (Dkt. 23 at 10; *see* Dkt. 1-2.)

When a plaintiff seeks equitable relief, a court can order an asset freeze "to assure the availability of permanent relief," *Levi Strauss*, 51 F.3d at 987, and "the district courts' equitable powers [to freeze assets] apply even more broadly when the public interest is involved," *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1317 (11th Cir. 2004). Here, the remedies sought in the complaint include equitable relief: namely, injunctive relief to restrain Defendants from infringing, and assisting others in infringing, Plaintiff's utility patents and to prevent non-party financial service providers, ecommerce platforms, web hosts, search engines, and the like from facilitating Defendants' infringement. (Dkt. 1 at 16–17.) Moreover, Plaintiff represents that "[a]s a result of Defendants' infringement, Plaintiff intends to seek the equitable relief of an accounting of Defendants' profits under 35 U.S.C. § 289," and Plaintiff maintains: "Plaintiff has a good-faith belief that . . . Defendants will . . . hide their ill-gotten assets beyond the jurisdiction of this [c]ourt, unless those assets

continue to be restrained." (Dkt. 23 at 10.)  The court agrees that an asset freeze is warranted.  *See Purple Innovation, LLC v. Individuals*, No. 24-24008-CIV-MARTINEZ, 2024 WL 5399073, at \*3, 2024 U.S. Dist. LEXIS 239537, at \*8 (S.D. Fla. Oct. 25, 2024) (granting an asset freeze and reasoning: "In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that [the d]efendants have violated federal trademark and patent laws, [the p]laintiff has good reason to believe [the d]efendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this [c]ourt unless those assets are restrained.").  The public's interests in enforcing patent rights and counteracting consumer confusion, discussed above, lend additional support to this asset-freeze determination.  *See AT&T*, 381 F.3d at 1317.

Any person whose assets are frozen pursuant to this order may petition the court to modify the asset freeze by filing a motion in this case in compliance with the Local Rules.  *See Levi Strauss*, 51 F.3d at 987–88; *Purple Innovation*, 2024 WL 5399073, at \*5, 2024 U.S. Dist. LEXIS 239537, at \*14 ("Any [d]efendant or financial institution account holder subject to this [o]rder may petition the [c]ourt to modify the asset restraint set out in this [o]rder[.]").

## CONCLUSION

Accordingly:

1. Plaintiff's motion to convert (Dkt. 23) is **GRANTED** as set forth in this order.

2. This preliminary injunction is **ENTERED** against Defendant Zhende Tech:

## <u>PRELIMINARY INJUNCTION</u>

1. Defendant, its officers, directors, employees, agents, subsidiaries, and

distributors, and all other persons in active concert or participation with Defendant are preliminarily restrained from

   a. manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products infringing Plaintiff's asserted patents (Patent Numbers 10,609,904 and 12,156,508), including any reproduction, copy, or colorable imitation thereof;

   b. communicating, directly or indirectly, with any person or persons

      i. from whom Defendant purchased or obtained products infringing the asserted patents,

      ii. to whom Defendant sold or offered to sell these products, or

      iii. whom Defendant knows or reasonably believes to possess, control, or have access to any of these products;

   c. otherwise communicating, directly or indirectly, about this action with any person, except for Defendant's legal representation;

   d. secreting, concealing, destroying, selling off, transferring, or otherwise disposing of

      i. any products not manufactured or distributed by Plaintiff that bear the asserted patents or

      ii. any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products that infringe the asserted patents; and

   e. knowingly instructing, aiding, or abetting any other person in engaging

in any of the activities referred to in a. through d. above.

2. During the pendency of this action or until further order of the court, Defendant shall not transfer any ownership interest of a business if that business has in any way used online marketplaces with respect to products that infringe the asserted patents, including any reproduction, copy, or colorable imitation thereof.

3. Upon receiving notice of this order, Defendant and any third-party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who are providing services for Defendant including but not limited to online marketplaces (collectively, the third-party providers) shall, within five business days after receipt of notice of this order,

   a. restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for Defendant's benefit or to be transferred into Defendant's financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this order shall be transferred or surrendered by any third-party provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this court.

    b. provide Plaintiff expedited discovery of

        i. the identity of all financial accounts and subaccounts associated with the stores operating under the identifying information seen in Schedule A, as well as any other accounts of the same customers,

        ii. all known contact information for Defendant, including its identities, locations, aliases, and email addresses, and

        iii. an accounting of the total funds restrained and identities of the financial accounts and subaccounts for which the restrained funds are related.

4. Any person subject to this order may petition the court to modify the asset freeze set forth in this order by filing in this case a motion that fully complies with the Middle District of Florida Local Rules, available at the court's https://www.flmd.uscourts.gov/sites/flmd/files/flmd-amended-local-rules-effective-november-01-2025.pdf webpage.

5. This order shall apply to all seller accounts, seller identification names, ecommerce stores, domain names, websites, and financial accounts which Defendant is allegedly using to infringe Plaintiff's patents.

6. This order shall remain in effect until the court orders otherwise.

7. The $10,000 security that Plaintiff furnished to the court in connection with the TRO, (*see* Dkt. 20; Dkt. 23 at 10), meets Rule 65(c)'s security requirement such that Plaintiff need not provide additional security for the preliminary injunction.

- 23 -

**ORDERED** in Orlando, Florida, on April 3, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties